Good morning, Your Honors. May it please the Court, my name is Conrad Gregory Badar, and I represent the petitioner in these proceedings. Please say the name so I can understand. I want a correct pronunciation. Sure. Oh, you want the correct pronunciation of the petitioner? Yes, yes, yes. Cui, Tanhai Cui. Yes, yes. C-U-I-S-E. That's what I said. Yep. Okay. So, Your Honors, this matter is an asylum case based on the statutorily protected grounds of religion and imputed political opinion. However, this case is primarily based on the nexus issue, and that the immigration judge and the Board, their analysis on that issue is fundamentally flawed. Our position is that this Court should remand this case back to the Board with appropriate orders on the basis of two main reasons. The first main reason is that the immigration judge explicitly based her adverse credibility determination on impermissible speculation and conjecture. Our second argument is that the immigration judge and the Board completely ignored evidence on the record that the petitioners can conclusively establish a well-founded fear of future persecution based on his family relationships. Now, so to deal with the adverse credibility finding first, I call your attention to page 10 of the judge's decision. And at page 10, the judge found that it was, in her words, very significant that the petitioner's wife was able to operate an underground church at their home for a period of 20 years without police interference. Now, it's curious that the IJ would be alarmed by this. A plain reading of the text in the State Department report explicitly indicates that unregistered groups are more likely to encounter difficulties when their membership was large. But is the persecution based upon his family participation or is it based upon his participation? At the time that he was in China, at the time of his arrest, he was not a participant of the underground church. His wife was conducting the secret meetings at their home for a period of 20 years. So the theory would be that if a member of your family is persecuted, you could then base your petition on the persecution of a member of your family? Yes, there is an answer to your precedent. Your theory is that your client himself was persecuted on the basis of imputed religious views, right? That's correct. In addition to past persecution, we also have a strong argument of a well-founded fear of future persecution based on that family membership. I want to get back to your attack on the passage you just referred to in the IJ's ruling. The IJ says, right, that she finds this testimony very suspect. Now, what's wrong with that, with the IJ's inference? Well, the IJ can make that inference, but that inference has to be based on evidence on the record. The judge made the inference that it was highly suspect on the basis, this was clearly on page 10, merely that they were able to conduct their secret meetings for a period of 20 years. That period of 20 years, I assume, must have been staggering to the judge. However, a clear reading, a plain reading of the text in the State Department report shows that it's easy if you're small and you're mobile. And the facts of this case, this church was small and it was mobile. And I was getting to the part of them being mobile because the petitioner also testified that at most twice a month the underground church was conducted at his home. So there were five or six other members. They were rotating. They were mobile. They were mobile. And being small and mobile, they were able to escape detection and remain secret. So consequently, our position is that the judge's adverse credibility determination, based on the finding that this testimony regarding a 20-year period was highly suspect, in her words, represents clear error and constitutes impermissible speculation and conjecture. Now, there is another instance in a decision that the judge had committed impermissible speculation and conjecture. If I can call your attention to page 12 of the judge's decision. Now, therein, the IJ found, in her words, highly questionable that the police had all of a sudden arrested the petitioner's wife in 2006. Again, it's puzzling that the IJ would find this suspicious since the petitioner provided testimony that the mother and the daughter, who were practicing in underground churches, had started preaching outside of their church, outside of their secret church, to the people in their village. They'd exposed themselves. Now, this is important because the International Religious Freedom Report explicitly states that China has a regulatory ban on proselytizing. So, with this ban, it's reasonable to conclude that the petitioner's wife's underground church became more visible, more exposed, following her public preaching. But his wife is still in China. Incorrect, Your Honor. The wife is now – she came here in 2016. She obtained her green card and she presently lives here in the United States along with the rest of the family. And the daughter and the son. The daughter is a U.S. citizen. The daughter is a U.S. citizen and the son, who is also part of this case. Now, between 205 and 2016, was she subject to persecution? She claimed that she was. However, she was able to obtain her green card through consular processing, and so she never had submitted – affirmatively filed a 509 asylum application. Okay. So, with this ban on proselytizing, it's reasonable to conclude that her church – the church became more visible following her public preaching. The State Department report details that unregistered groups faced increased scrutiny from authorities when they engaged in discussions of legal or political activism. Therefore, our position is that the judge's adverse credibility determination based on her finding that the petitioner's testimony regarding this 2006 arrest, in her words, would be highly questionable. That represents clear error and impermissible speculation and conjecture. So, our second argument. Our second argument is that – Just to warn you, you're down to two minutes. So, if you want time for rebuttal, you'll have to make the second argument pretty brief. I'll go to the second argument. Okay. So, our second argument is that both the board and immigration judge, they ignored clear evidence on the record that the respondent has a well-founded fear of future persecution based on his family relationships. Again, the petitioner provided that evidence that his daughter, she filed an asylum application in the United States. She was granted an LA asylum office. She was naturalized. She petitioned both for her mother and her father. So, consequently, we argue that if the petitioner was returned to the People's Republic of China, he would not only be singled out for persecution individually, but we can conclusively establish that there is a pattern and practice in China for persecution of individuals similarly situated as the petitioner, based on the details contained in the State Department report. This report explicitly notes that family members of activists, rights defenders, unregistered religious figures were targeted for arbitrary arrest and detention and harassment. Age 250 of administrative record. Moreover, the report indicates that individuals similarly situated as the petitioner, if he were forced back to China, would be put under heavy surveillance, have his devices monitored, and would be targeted for arbitrary arrest and detention. Therefore, we argue that it is highly likely that he would be singled out as the father of a United States asylee, and that it is likely that the Chinese authorities would regard him as a troublemaker, as a political dissident, and indeed as a threat to their authority. Therefore, it's reasonable that the authorities would seek a very public retribution if he were returned back to China against him to discourage his or further political dissent with him or within his community, if he were returned back to China. Okay, Counselor, your time has expired, but we'll give you a minute for rebuttal. Okay, why don't we hear from the government first whenever you're ready. You can return to your seat until he's done. May it please the Court. Micah Engler on behalf of the Attorney General of the United States. There are really two issues in this case. The first is the adverse credibility determination, and the second is the finding of no past persecution or a well-founded fear of future persecution on account of a protected ground. With regard to the adverse credibility finding, the Board held that the immigration judge's findings were supported by the record, and the immigration judge pointed to specific inconsistencies in the petitioner's testimony. The immigration judge highlighted the fact that the petitioner mischaracterized the reason for his arrest and detention. Let's pause on that because that struck me as the most egregious error in the IJ's decision. The petitioner didn't mischaracterize anything. He just explained the circumstances under which his arrest occurred. It was both because of this dispute with the neighbor, but also he suspected because the neighbor had informed the police that his wife and daughter participated in this underground church. He didn't mischaracterize anything. He just laid out the facts. So how is the IJ's finding of there being a mischaracterization supported by the record here? Your Honor, the first two times petitioner was asked why he was arrested and detained, he said it's because my wife and daughter practice Christianity and attend a house church. He makes no reference to his neighbor. It's only after he's confronted about the fact that it does not necessarily follow that he would be arrested, as opposed to his wife and daughter, if the issue is actually them practicing Christianity, it's only then that he says, oh, and the day I was arrested, I got into an altercation with my neighbor that morning and I think he tried to frame me because he wanted my property and his nephew worked for the police force. It's only after twice neglecting to mention that that he then mentions that. Additionally, the immigration judge pointed to other issues in the testimony and evidence, including when petitioner became Christian. In his asylum application, the word Christian is typed under religion, and then at some point during his asylum interview, Christian is crossed off and the word none is written next to religion. And he's asked about this during his testimony, and he doesn't provide any cogent reasons or explanations for these discrepancies. I thought that, remind me that in terms of the timing of the filing of the application, I thought he simply was not a Christian at the time of the events that gave rise to the application, but by the time he was in the United States, he had converted, correct? He was not a Christian while in China. When he filed his asylum application, he was still not yet a Christian, and subsequent to the asylum interview, he was baptized and became a Christian in December of 2007. Okay, so what are we supposed to infer from what's noted on the application? So it's unclear why he wrote on his asylum application that he was Christian. That is just one of the inconsistencies that the immigration judge highlighted when she is looking at the totality of the circumstances to base her credibility determination. Additionally, petitioner was provided notice and opportunity to corroborate his testimony when the immigration judge on several occasions said, I'm going to make an adverse credibility determination, and if you want to add anything to the record, now is your time. Four separate times the immigration judge. Just a minute. Are you saying that's sufficient notice to the applicant that he's got to provide corroborating evidence? In this case... There's no other admonition to him, right, from either the IJ or the BIA that he should provide corroborating evidence. In fact, he was criticized for not providing evidence from his son or his daughter. But he was not given specific notice, was he, that he should provide corroboration if it's available? Isn't that what the statute requires? Your Honor, in this case, originally the immigration judge issued a decision in 2009, and in that decision she specifically said that it was significant that the daughter did not testify and corroborate the petitioner's evidence. That case ended up getting appealed to the board and ultimately remanded back to the immigration judge for clarification regarding the credibility assessment. So in that decision, the petitioner was given notice that it was significant to the immigration judge and her adverse credibility determination that the daughter did not testify. Then before issuing a new decision, the immigration judge told the petitioner, I'm going to issue another adverse credibility determination, and if you would like, you can provide additional testimony, you can provide additional evidence. Petitioner failed to do so and failed to provide any explanation for not doing so, including why his daughter, who was in the United States at the time because she received asylum in 2003, why she could not testify on his behalf. Therefore, petitioner had notice and opportunity to corroborate his testimony and failed to do so. Alternatively, the board made a determination that even if petitioner had been found credible, he still failed to establish that there was past persecution or well-founded fear on account of a protected ground. In this case, the harm that petitioner experienced did not rise to the level of persecution based on Ninth Circuit decisions. How do you characterize that harm or describe that harm? In this case, petitioner was detained for seven days. During that seven days, he was interrogated once for ten minutes, during which time he was questioned, he was pushed, he was kicked, and he was hit with an electric baton. There's no testimony regarding having to receive medical assistance afterwards. There's no evidence of severe or long-term injuries resulting from the detention. There's no evidence that he lost his job as a result of the detention. All of these are factors that the court has previously weighed when determining whether harm rises to the level of persecution. Are you saying that under Ninth Circuit case law, what you described as being confined, and during the confinement, subject to beating or kicking for ten minutes and electric shock, is not sufficient to amount to persecution? Is that what you're saying? Yes, Your Honor. Yes, Your Honor. Do we have a case that shows that kind of conduct and characterizes it as not amounting to persecution? What's the best case on that? Your Honor, the best case and the closest case to this is Gu v. Gonzalez, G-U v. Gonzalez, and that's at 454 F3D 1014. It's a 2006 Ninth Circuit case. Just a minute. 454? I'm sorry? 454 F3D 1014. 1014, okay, thank you. What about our more recent decision in Guo from this, from, I guess it was just last year? In Guo, the reason that the court found that the harm rose to the level of persecution was because the petitioner was no longer allowed to practice Christianity following detention. That was the issue. It wasn't the detention itself, and it wasn't the beating. That was the persecution. In this case, we don't have that issue. Petitioner repeatedly says, while I was in China, I was not Christian. So it can't be persecution similar to in Guo where he wasn't allowed to practice his religion. We can't have that in this case, and so the harm does not rise to the level of persecution. Additionally, opposing counsel mentions the immigration judge's decision that the 20 years were significant where petitioner's wife was holding meetings. It was significant because it doesn't make sense that the petitioner for 20 years is having meetings in his house and has never been arrested, has never had issues with police or authorities in China. And yet the day that he has an altercation with his neighbor, that is when he has an issue. That's the reason the immigration judge found it troubling that the explanation would be based on religion and not based on the altercation with the neighbor. Additionally, what it comes to- Doesn't it make perfect sense in light of the statements in the State Department report that your opponent mentioned? In other words, there would be no reason for a small church of this sort to come to the attention of the authorities, and the only reason petitioner even ran into any trouble with the police was because of this dispute with his neighbor. And his neighbor used the ongoing home church activities of his wife and daughter as a means of encouraging the police to take him into custody and to beat him. Your Honor, much more relevant than the State Department reports are everything that happened to the wife following 2002. There's no indication that she was arrested for religious reasons, and she lived there now, opposing counsel said, until 2016. There's no evidence in the record that she was arrested. In fact, petitioner testifies that she continued to go to meetings since he left China, but there's no evidence that she was arrested for religious reasons. I see that- If there are no further questions, the court should deny the petition for review. Thank you, Your Honor. Thank you very much. We'll give you a minute for rebuttal. The court had a discussion with opposing counsel about the corroboration claim. Petitioner wants to point out that at page 11 of the judge's decision, where she indicates that nowhere does it respond to state that his wife or daughter were ever interrogated or physically abused or harmed. What's your response to your opponent's argument that your client was put on notice, certainly that testimony from his daughter would be helpful, and your client never provided any explanation for why she did not testify? Well, Your Honor, as you know, the respondent, I'm sorry, the petitioner's daughter, she affirmatively filed an asylum application, and she detailed her account of past persecution to an immigration officer. That was not easy to do, Your Honor. Was that part of the record in this case? Yes, that was explained in the asylum application that she had obtained asylum on the statutorily protected ground of religion. It's consistent with testimony that he had indicated in court, he being the petitioner, that she was an underground church practitioner. I think it's natural that the daughter had fear of presenting her case again, talking about her case again in an adversarial setting. So the petitioner, being the father that he is, devoted to the interests of his daughter, didn't want her to. And moreover, I just want to say one thing. The judge never asked for the daughter to testify. The judge did ask for the pastors to testify, but did not ask for the daughter to testify. So that's curious that the judge would indicate at page 11 of her decision that this was a factor in her adverse credibility determination, that the daughter never appeared, and that he never states that the wife or daughter were ever interrogated, physically abused, or harmed. Well, that's just wrong because page 5 of the asylum application, the petitioner does indicate that mistreatment occurred to his family members. That's right there at page 5. The declaration indicates that both his daughter and his wife, he incurred loss of freedom. That's the words he used in the declaration. Now, that freedom was the freedom to practice their faith in an unsectioned church. And we know that the court has recently held in Guelph versus Sessions that this restriction, these restraints on their freedom constitutes persecution. One more question, if I may. Your opponent mentioned the Guo case and the Gu case, which appeared to be somewhat in tension. What's your explanation as to what is the applicable law? It would be Guelph versus Ashcroft, Your Honor, that the amount of persecution, his account of persecution rises to the level or is similar to the harm suffered by that petitioner in Guelph versus Ashcroft. However, the strength of this petitioner's case is truly his well-founded fear of future persecution. It's absolutely reasonable to believe that the Chinese government would exact retribution against him for being the father of a United States citizen, a sidely, who in public or in an interview harshly condemned the state practices of the Chinese government. Thank you, Counsel. Thank you. The case just argued is submitted.
judges: Tashima, Watford, Robreno